UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

------------------------------------------------------------------X

CARLOS MORINVILLE,

Plaintiff,

**ORDER**

-against-

21-CV-6088(JMA)(ARL)

JAMES DZURENDA, OFFICER RICHARDSON,
OFFICER BIEN, CORPORAL IMHOR, OFFICER
GRIFFIN, JANE DOE,

FILED
CLERK

12:28 pm, Jan 24, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

Defendants.

------------------------------------------------------------------X

CARLOS MORINVILLE,

Plaintiff,

-against-

21-CV-6447 (JMA)(ARL)

JAMES DZURENDA, JANE DOES 1-4,

Defendants.

------------------------------------------------------------------X

CARLOS MORINVILLE,

Plaintiff,

-against-

21-CV-6819 (JMA)(ARL)

JAMES DZURENDA, OFFICER SZA,
OFFICER MURPHY, OFFICER PAPA,
OFFICER EDGEWORTH, CORPORAL KELLER,

Defendants.

------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Incarcerated pro se plaintiff Carlos Morinville ("Plaintiff") has filed three in forma pauperis complaints alleging claims pursuant to 42 U.S.C. § 1983 against Nassau County Sheriff James Dzurenda ("Sheriff Dzurenda") and fourteen (14) named and unidentified corrections officers working at the Nassau County Correctional Center (the "Jail"). For the reasons that

follow, the application to proceed in forma pauperis filed in each case are granted, and the complaints are consolidated into the first-filed action, 21-CV-6088 ("Morinville I").   The cases assigned docket number 21-CV-6447 ("Morinville II") and 21-CV-6819 ("Morinville III") shall be marked closed and all future filings are to be docketed in only 21-CV-6088.

## I.   BACKGROUND

### A. Morinville I

On November 1, 2021, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against Sheriff Dzurenda, Corrections Officer Richardson ("C.O. Richardson"), Corrections Officer Bien ("C.O. Bien"), Corrections Officer Griffin ("C.O. Griffin"), Corporal Imhoe ("CPL Imhoe") and an unidentified corrections officer, identified as "Jane Doe" and collectively, "Defendants".[1] Plaintiff alleges that, on April 13, 2021, he was assaulted by C.O. Richardson while Plaintiff was in the medical unit at approximately 1:30 p.m.   (Morinville I, ECF No. 1 at 3-4.)   More specifically, Plaintiff alleges that he was escorted to the medical unit by C.O. Richardson and, upon arrival, the front desk officer, C.O. Griffin told Plaintiff to have a seat.   "Seconds later", Plaintiff alleges that C.O. Richardson told Plaintiff to "step into the PENS waiting area."   (Id. at 4.)   Plaintiff refused, explaining that C.O. Griffin instructed Plaintiff to have a seat until the nurse comes, shortly.   (Id.)   C.O. Richardson allegedly then "aggressively grabbed [Plaintiff] by the shirt causing [Plaintiff] to stumble to the ground where he repeatedly punched, kicked, and stomped all over [Plaintiff's] body."   (Id.)   According to the complaint, C.O. Griffin called for

---

[1] Plaintiff did not remit the filing fee nor did he file an application to proceed in forma pauperis and the required Prisoner Litigation Authorization form ("PLRA") at the time he filed the complaint.   Accordingly, by Notice of Deficiency also dated November 2, 2021, Plaintiff was instructed to either, within fourteen (14) days, remit the $402 filing fee or complete and return the enclosed in forma pauperis application and PLRA.   (See Morinville I, ECF No. 2.)   On November 18, 2021, Plaintiff filed an in forma pauperis application and PLRA.   (Id., ECF Nos. 6-7.)

"back up" and "just stood there" while Officer Bien, Cpl. Imhoe, and "a few others participated in the attack." (Id.)   As a result of the alleged attack, Plaintiff claims that he "suffered head pains, back pains, shoulder, right knee, left wrist damage along with blood to my mouth." (Id.) Plaintiff also claims to have suffered "emotional and psychological distress" for which he received medical treatment approximately three months later on July 22, 2021. (Id.)   For relief, Plaintiff seeks to recover a compensatory damages award in the sum of one hundred million dollars from each defendant as well as a punitive damages award in the same amount from each defendant. (Id. at 5.)

## B. Morinville II

On November 16, 2021 Plaintiff filed another in forma pauperis complaint against Sheriff Dzurenda, and four unidentified corrections officers alleged to work at the Jail ("Jane Does 1-4") complaining that, since June 23, 2021, he is unlawfully being forced to undergo a strip search, in a separate room, each time he has an attorney visit. (Morinville II, ECF No. 1.)   According to the complaint, this practice is contrary to "Rule #54 in the handbook" which is alleged to authorize a strip search upon admission and after "contact visits." (Id. at 4.)   Plaintiff complains that he has been subjected to strip searches even though he has not had a contact visit.   As a result, Plaintiff alleges to have suffered humiliation, an increase in depression, as well as "mental anguish, agony, psychological injury. . . ."   Plaintiff seeks to recover a damages award in the total sum of one billion dollars.2   (Id. at 5.)

---

2 Again, Plaintiff did not remit the filing fee, nor did he file an application to proceed in forma pauperis and the required PLRA.   Accordingly, by Notice of Deficiency also dated November 17, 2021, Plaintiff was instructed to either remit the $402 filing fee or to complete and return the enclosed in forma pauperis application and PLRA within fourteen (14) days.   (Morinville II, ECF No. 2.)   On December 2, 2021, Plaintiff timely filed an application to proceed in forma pauperis and the PLRA.   (Morinville II, ECF Nos. 5-6.)

### C.  **Morinville III**

On December 8, 2021, Plaintiff filed his third in forma pauperis complaint against Sheriff Dzurenda.  (Morinville III, ECF No. 1.)  This complaint also names five corrections officers: Officer Sza ("C.O. Sza"), Officer Murphy ("C.O. Murphy"), Officer Papa ("C.O. Papa"), Officer Edgeworth ("C.O. Edgeworth"), and Corporal Keller ("Cpl. Keller" and collectively, "Defendants") and alleges that, on or about November 16, 2021 in the Jail's satellite dorm housing location E1E, Plaintiff "missed medication" at approximately 8:00 a.m. because he was in the law library.  (Id. at 4.)  Plaintiff alleges that an unnamed officer told him the nurse would be back later.  (Id.)  According to the complaint, the nurse returned at approximately 1:00 p.m and gave other inmates their medications, but skipped Plaintiff.  (Id.)  Plaintiff describes that he asked an unnamed officer why he has not received his medication and was told that the nurse had said that Plaintiff "only take[s] cream" and left.  (Id.)  Plaintiff asked the officer to call the medical department and the mental health department, both of which the officer allegedly refused to do. (Id.)  Plaintiff alleges to have said: "This is some bullshit.  You guys don't do shit." (Id.) According to the complaint, Plaintiff was then ordered to return to his cell, which he "refused to do."  (Id.)  Plaintiff alleges that he walked to the top of the stairs where "Officer Murphy grab[bed] me aggressively by the back of my shirt" and C.O. Edgeworth sprayed my face with pepper spray while C.O. Sza and C.O. Papa "forced me to the ground kicking and punching me." (Id.)  C.O. Edgeworth then allegedly squeezed Plaintiff's testicles and forcefully pushed his fingers in Plaintiff's anus.  (Id.)  According to the complaint, Plaintiff was taken to the medical department "minutes later."  (Id.)

As a result of the foregoing, Plaintiff alleges to have experienced an "increase of my depression", as well as emotional distress, mental anguish, agony, and psychological injury for

which he seeks to recover a damages award in the total sum of $1.2 billion.3   (Id. 4-5.)

## II.    Applications to Proceed In Forma Pauperis

Upon review of Plaintiff's submissions, the Court finds that he is qualified by his financial status to commence these actions without prepayment of the Court's filing fees.   Accordingly, Plaintiff's applications to proceed in forma pauperis are granted.

## III.    Consolidation of the Complaints

Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."   Fed. R. Civ. P. 42(a).   "The trial court has broad discretion to determine whether consolidation is appropriate."   Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990). Consolidation is appropriate in order to serve the interests of judicial economy.   See, e.g., Jacobs v. Castillo, No. 09 Civ. 953 (CM), 2009 WL 1203942, at *3 (S.D.N.Y. Apr. 23, 2009) ("Consolidation would further the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law.").   Specifically, consolidation of cases with common questions of law or fact is favored "to avoid unnecessary costs or delay," Johnson, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 130 (internal citations omitted).

"The Second Circuit has long adhered to the first-filed doctrine in deciding which case to

---

3 Again, Plaintiff did not remit the filing fee, nor did he file an application to proceed in forma pauperis and the required PLRA with the complaint.   Accordingly, by Notice of Deficiency also dated December 8, 2021, Plaintiff was instructed to either remit the $402 filing fee or to complete and return the enclosed in forma pauperis application and PLRA within fourteen (14) days.   (Morinville III, ECF No. 2.)   On December 27, 2021, Plaintiff timely filed an application to proceed in forma pauperis and the PLRA.   (Morinville III, ECF Nos. 6-7.)

dismiss where there are competing litigations.   Where there are several competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second."   Kellen Co. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (internal quotation marks, alterations, and citations omitted); accord Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989).   The first-filed rule seeks to conserve judicial resources and avoid duplicative litigation.   See Adam, 950 F.2d at 92; First City Nat'l Bank & Trust Co., 878 F.2d at 80; Kellen, 54 F. Supp. 2d at 221.

Here, the complaints filed by Plaintiff purport to allege deprivations of his constitutional rights while incarcerated at the Jail.   All of the defendants are alleged to work at the Jail, and at least one defendant, Sheriff Dzurenda, is named in all three complaints.[4]  Accordingly, the Court orders that Plaintiff's complaints be consolidated pursuant to Federal Rule of Civil Procedure 42 into the first-filed case, Morinville I, 21-CV-6088.   The Clerk of Court is directed to: (1) consolidate these actions; and (2) mark Morinville II (21-CV-6447) and Morinville III (21-CV-6819) closed.   All future filings are to be docketed in only 21-CV-6088.

## IV.    Standard of Review

The Prison Litigation Reform Act requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted."   28 U.S.C. § 1915A(b)(1).   Similarly, pursuant to the in forma

---

[4] Given that several of the Defendants are presently unnamed, it is impossible to determine the full extent that the parties overlap at this stage in the proceedings.

6

pauperis statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. § 1915(e)(2)(B).   The Court must dismiss the action as soon as it makes such a determination.   28 U.S.C. § 1915A(b).

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers."   Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).    In addition, the court is required to read a plaintiff's pro se complaint liberally and interpret it as raising the strongest arguments it suggests.   United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").   However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).   The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."   Id. at 678.   While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   Id. at 678 (quoting Twombly, 550 U.S. at 555).

A.   **Section 1983**

Section 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State . . . subjects, or causes to be subjected, any citizen of the
United States . . . to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for

vindicating federal rights elsewhere conferred by those parts of the United States Constitution and

federal statutes that it describes."   Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Thomas v.

Roach, 165 F.3d 137, 142 (2d Cir. 1999).   In order to state a § 1983 claim, a plaintiff must allege

two essential elements.   First, the conduct challenged must have been "committed by a person

acting under color of state law."   Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting

Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan,

526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach

merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks

and citation omitted).   Second, "the conduct complained of must have deprived a person of rights,

privileges or immunities secured by the Constitution or laws of the United States."   Id.; see also

Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

Moreover, in an action brought pursuant to § 1983, a plaintiff must allege the personal

involvement of the defendant in the purported constitutional deprivation.   Farid v. Ellen, 593 F.3d

233, 249 (2d Cir. 2010) (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).   "Personal

involvement" may be established by evidence of a supervisor's direct participation in the

challenged conduct or "by evidence of an official's (1) failure to take corrective action after

learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the

unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or

8

(4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). An "individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority.'" Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

1.      **Section 1983 Claims Against Sheriff Dzurenda**

Here, although Plaintiff names the Sheriff Dzurenda as a defendant in the caption and the identification of parties section of each complaint, he is not again mentioned in the body of any of the complaints. Thus, affording the pro se complaint a liberal construction, it appears that Plaintiff seeks to impose liability against Sheriff Dzurenda given the supervisory position he holds. However, as the Second Circuit Court of Appeals recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 618, 620 (2d Cir. 2020). Indeed, there are no factual allegation in any of the complaints concerning any conduct or inaction by Sheriff Dzurenda such that the Court could reasonably construe a plausible Section 1983 claim against him. Accordingly, because the complaints fail to state a claim against Sheriff Dzurenda, such claims are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2.      **Claims Against Cpl. Keller**

Similarly, although Plaintiff named Cpl. Keller as a defendant in the caption and

identification of parties section of the complaint filed as Morinville III (see 21-CV-6819 at ECF No. 1), he is not again mentioned in the body of the complaint.   In the absence of any factual allegations of conduct or inaction attributable to Cpl. Keller, Plaintiff has not plausibly alleged a claim for relief against him.   Accordingly, the complaint fails to state a claim against Cpl. Keller and any claims against him are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### 3.     Claims Alleging a Violation of the Inmate Handbook

Plaintiff's complaint in Morville II, although brought pursuant to § 1983, alleges only that the Defendants violated "Rule #54 of the Inmate Handbook."   (See Morinville II at ECF 1, generally.)   As is readily apparent, such allegation, even if true, does not rise to a constitutional deprivation and thus does not present a plausible Section 1983 claim.   And, even affording the pro se complaint a liberally construction, the sparse allegations do not set forth a cognizable constitutional deprivation for the reasons that follow.

"'Strip searches do not violate the Fourth Amendment if they are performed pursuant to policies that are 'reasonably related to legitimate penological interests.' Lopez v. Phipps, 18-CV-3605, 2019 WL 2504097, at *4 (E.D.N.Y. June 17, 2019) (quoting Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 326, 132 S. Ct. 1510, 1515, 182 L. Ed. 2d 566 (2012))."   Taylor v. Fludd, No. 19-CV-5127(JS)(GRB), 2020 WL 127642, at *3-4 (E.D.N.Y. Jan. 9, 2020).   Indeed, "[a] strip search is unconstitutional under the Fourth Amendment 'if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish.'" Taylor, 2020 WL 127642 at *4 (citing Holland v. City of N.Y., 197 F. Supp. 3d 529, 542–43 (S.D.N.Y. 2016) (internal quotations and citation omitted).   Here, Plaintiff's sparse allegations do not include any facts sufficient to plausibly suggest that the strip searches at issue were not

legitimately related to penological interests or were designed to harass or punish him.   Thus, Plaintiff's allegations fall far short of alleging a plausible Section 1983 claim relating to the alleged strip searches.   Accordingly, Plaintiff's claims, as set forth in Morinville II are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### 4.   Claims Against C.O. Richardson, C.O. Bien, C.O. Griffin, Cpl. Imhoe, C.O. Murphy, C.O. Edgeworth, C.O. Sza, C.O. Papa, and Jane Doe[5]

Though thin, the Court declines to <u>sua sponte</u> dismiss Plaintiff's claims alleged against C.O. Richardson, C.O. Bien, C.O. Griffin, Cpl. Imhoe, C.O. Murphy, C.O. Edgeworth, C.O. Sza, C.O. Papa, and Jane Doe at this early stage in the proceedings.   Accordingly, such claims shall proceed.   The Court orders service of the summonses and consolidated complaints upon the named defendants set forth above by the United States Marshal Service ("USMS") forthwith.

## V.   CONCLUSION

For the forgoing reasons, Plaintiff's application to proceed <u>in forma pauperis</u> in each case is granted and the complaints in Morinville I, Morinville II, and Morinville III are consolidated pursuant to Federal Rule of Civil Procedure 42 into the first filed case, 21-CV-6088, Morinville I. The Clerk of Court is directed to: (1) consolidate these actions; and (2) mark Morinville II (21-CV-6447) and Morinville III (21-CV-6819) closed.   All future filings are to be docketed in only Morinville I, 21-6088.   Plaintiff's claims against Sheriff Dzurenda, Cpl. Keller and the Jane Does in Morinville II are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).   Plaintiff's remaining claims against C.O. Richardson, C.O. Bien, C.O. Griffin, Cpl. Imhoe, C.O. Murphy, C.O. Edgeworth, C.O. Sza, C.O. Papa, and Jane Doe shall proceed.   The

---

[5] Plaintiff does not provide any identifying information regarding this unnamed individual defendant.   Accordingly, should Plaintiff learn her identity during discovery, he may seek leave to amend the complaint at such time.

Clerk of Court shall send a copy of this Order together with summonses for the named defendants and copies of the consolidated complaints to the USMS for service forthwith.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court shall mail a copy of this Order to Plaintiff at his address of record.

**SO ORDERED.**

_____/s/ (JMA)_____

Dated:          January 24, 2022                          Joan M. Azrack
                Central Islip, New York                  United States District Judge